# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 12, 2001

## STATE OF TENNESSEE v. PARKER ODELL DONEY, JR.

**Direct Appeal from the Criminal Court for Sumner County**
**No. 370-2000     Jane Wheatcraft, Judge**

---

**No. M2001-01187-CCA-R3-CD - Filed January 17, 2001**

---

The defendant, Parker Odell Doney, Jr., appeals his convictions for one count of aggravated robbery and two counts of aggravated assault and his sentences totaling fifteen years in the Department of Correction. The defendant contends the evidence presented against him at trial was insufficient to support his convictions, and the trial court erred in sentencing him. After a thorough review of the record, we reduce the aggravated assault sentences but otherwise affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified**

JOE G. RILEY, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Mike Carter, Gallatin, Tennessee, for the appellant, Parker Odell Doney, Jr.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Sallie Wade Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The state's proof revealed that on March 3, 2000, the defendant, along with Antonio Cartwright, Corey Jones, and Brandon Moore, walked into the apartment of victims Ricky Ramsey and Robert Bracey. The defendant struck Ramsey on the head with a pistol and then with a beer bottle. The defendant and Cartwright assaulted Ramsey while the others restrained and assaulted Bracey. The defendant's companions took property from the apartment and divided it with the defendant.

Ricky Ramsey testified Martez Fitts stopped by his apartment, and the two of them played a video game in the living room. Ramsey stated he had known Fitts for years and, more recently,

they were employed together.  While they were playing the video game, Robert Bracey and his sister, Katrina Bracey, entered the apartment.  Ramsey said there was a knock at the door, and the defendant entered uninvited along with the other men.  Ramsey testified he did not know the men, but he recognized Antonio Cartwright, a relative of Fitts.

According to Ramsey, the men remained silent.  Ramsey said he "knew something wasn't right," so he told Robert Bracey and his sister, who were leaving to go to their mother's home, that he would leave with them.  Ramsey testified that as he stood up and began walking, the defendant pulled out a gun, jumped at him, and struck him on the head with the gun.  Ramsey described the gun as having a silver barrel and black handle.  Ramsey said the defendant lost control of the gun, and it fell to the floor.  Two of the other men charged Robert Bracey.  Ramsey said he was hit over the head with something "glass and wet" as he and the defendant were struggling for the gun.  Ramsey testified he was dazed after being struck and lay still for an unknown period of time.  Then he went to his bedroom in response to an order by the defendant, who was holding the gun.  While he was in the bedroom, Cartwright struck Ramsey in the mouth.  Ramsey testified Cartwright and the defendant kicked, stomped and hit him while he was curled up in a ball.  The defendant then ordered Ramsey to lie on the living room floor.  Ramsey observed one of the men on top of Robert Bracey, who was on the floor.

As the three other men started to leave, the defendant stopped, grabbed a bar stool, and used it to again strike Ramsey.  Then the defendant and the others left the apartment.  Ramsey testified the apartment was ransacked during the incident.  He also stated he had about $500 in cash in the locked closet in his bedroom.  Ramsey said the money, his video game, and a set of wheels were taken from the apartment.  According to Ramsey, Fitts knew he was saving money for a car and was working a great deal of overtime.  Ramsey testified Fitts was not involved in the assault, and he did not know what happened to him.  Fitts was not charged with the crime.

Robert Bracey testified he heard a knock on the door, and the defendant entered the apartment along with the other men.  Bracey testified the defendant promptly reached into his waistband and brought out a pistol, lunged at Ramsey, and struck Ramsey in the head with the pistol.  The defendant and Ramsey struggled for the pistol, which had fallen to the floor.  Bracey described the gun as being a black semi-automatic pistol approximately eight inches long.  Bracey stated he attempted to "go for the weapon," but he was struck in the back of the head and dragged into the bathroom, where he was ordered to lie face down.  Then someone stood on the back of his neck and repeatedly struck him in the back, near his kidneys.  Minutes later, someone removed his wallet, containing $35, from his pants pocket.  Bracey testified he heard breaking glass and "stuff being rumbled through" while he was lying in the bathroom, and he could see objects being thrown.

Katrina Bracey testified she heard a knock on the door, and Ramsey rose from the couch to answer the door.  Robert Bracey asked who was at the door, and Katrina Bracey heard a mumble from the other side of the door before the defendant entered with three other men.  She testified the men spread out in a line in front of them and, after a brief exchange of words, the defendant pulled a gun from his waistband, lunged at Ramsey, and hit Ramsey in the head with the gun.  She observed

the defendant struggling with Ramsey. Brandon Moore and Corey Jones were struggling with her brother. She stated the defendant hit Ramsey on the head with a beer bottle.

Katrina Bracey said she tried to leave the apartment to seek help, but Fitts shut the door in her face. Then the defendant turned towards her, pointed the gun at her, and told her to go to a bedroom and put her head down. As she complied, she observed Jones and Moore holding her brother down on the floor. She stated the defendant and Cartwright took Ramsey into the other bedroom. She also observed the men strike Ramsey while he lay in the living room floor with a couch cushion over his head. Before they left, the men yelled, "Call the cops and see what happens!" and "Get ready. Here it comes!" Then Ramsey was hit with the bar stool. She stated the apartment was "in shambles" following the incident.

Investigator Alicia Pack testified the apartment was ransacked, with drawers and cabinets open and their contents strewn in the floor. She described the apartment as being "really, really small" such that a person could stand in the living room and see all of the apartment. Pack noticed blood underneath the coffee table in the living room, blood splatters on the kitchen floor, bloody fingerprints on a bedroom closet door, and blood smeared on a wall near the closet.

Detective Stan Hilgadiack testified the defendant denied any knowledge of the crime during an interview on March 29, 2000. Hilgadiack stated the defendant also denied knowing Ricky Ramsey, Brandon Moore, or Corey Jones, and further denied owning a b.b. gun or any other weapon. On April 5, 2000, during an interview with Investigator Pack, the defendant admitted he was present at the apartment at the time of the crime. He said he struck Ramsey with a b.b. gun and a beer bottle.

Corey Jones, who pled guilty to two counts of facilitation to commit aggravated robbery in connection with the incident, testified for the defendant. Jones stated the defendant, Antonio Cartwright, Brandon Moore, and Martez Fitts were with Jones at Jones's home, where they were all using cocaine, except the defendant. Jones said he had never known the defendant to use drugs. Jones stated they decided to leave to purchase some marijuana.

Jones said Fitts directed them to Ramsey's apartment, where Fitts went inside to buy marijuana while the rest of them remained in the car. Jones testified Fitts had been in the apartment between ten and twenty minutes when the others decided to join him. Jones stated they knocked on the door and heard, "Come in." According to Jones, the defendant and Ramsey had a prior altercation over a girlfriend. Jones said the defendant realized Ramsey was there and thought Ramsey was "going to do something to him." Jones indicated Ramsey reached under the couch. Jones testified the defendant and Ramsey scuffled, but later admitted he truthfully told police the defendant suddenly pulled out a gun and struck Ramsey's head. Jones admitted wrestling Robert Bracey to the ground because he thought Bracey was going to assist Ramsey. He testified he remained on Bracey's back to "[make] sure he didn't go anywhere." Jones also admitted taking Bracey's wallet. Jones stated Brandon Moore took marijuana from Ramsey's closet, which was divided by the participants in the crime, including the defendant.

Jones testified there was no plan to rob the victims before entering the apartment. He stated his decision to take Bracey's wallet was spontaneous. Jones said the wallet contained only $20, which was not shared with the defendant.

Antonio Cartwright, who pled guilty to two counts of facilitation to aggravated robbery and one count of aggravated assault, also testified for the defendant. Cartwright stated after they waited outside the apartment ten to fifteen minutes for Martez Fitts, he knocked on the door to see what was taking Fitts so long. Cartwright said he heard, "Come in," so they entered the apartment. Cartwright denied there was any plan to commit a robbery.

Cartwright speculated the defendant and Ramsey had a problem with a girl. Cartwright said Ramsey "reached up" upon seeing the defendant, and the defendant struck Ramsey across the head with a gun he got from Brandon Moore. Cartwright stated the defendant and Ramsey fought. Cartwright admitted he also struck Ramsey. Cartwright told police he saw Corey Jones on Robert Bracey's back. He also told police the defendant ran through the apartment ordering the victims to get down and not to move. Cartwright testified a half pound of marijuana worth about $500 was taken from Ramsey's closet and divided among them. Cartwright denied any knowledge of any property stolen from Robert Bracey.

The defendant testified he left Jones's house with the other men when they decided to go buy marijuana, though he denied using any drugs. He denied there was any plan to commit a robbery. The defendant said he and Ramsey had previously been in an argument over a girl, and Ramsey reached under the couch when he saw the defendant. The defendant said he grabbed a black b.b. gun from Brandon Moore's waist and struck Ramsey in the head. The gun came loose from his hand and fell on the floor. He said he and Ramsey fought from the living room into the bedroom and back into the living room; therefore, he did not notice what else was happening in the apartment. He admitted striking Ramsey in the head with a beer bottle.

The defendant said the other men grabbed Bracey because Bracey wanted to jump into the fight between him and Ramsey. He stated he and Ramsey were fighting throughout the entire episode, and he was trying to get away from Ramsey. He denied pointing a gun at Katrina Bracey and also denied taking anything from the apartment or from Robert Bracey. The defendant testified he did not know about the theft of the marijuana until Brandon Moore later poured it out on a table. He admitted taking some of the marijuana, but said he was "shocked" and did not know what was in the house.

Ricky Ramsey denied having marijuana in the apartment. Ramsey testified the gun held by the defendant did not appear to be a b.b. gun. Ramsey also denied that he and the defendant had a previous altercation regarding a girl.

The defendant was indicted for two counts of aggravated robbery regarding the acts against Ricky Ramsey and Robert Bracey and one count of aggravated assault for the acts against Katrina Bracey. A Sumner County jury convicted him of the aggravated robbery of Ramsey, the lesser-

included offense of aggravated assault of Robert Bracey, and the aggravated assault of Katrina Bracey.

## SUFFICIENCY OF THE EVIDENCE

The defendant argues the evidence was not sufficient to support his convictions. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Criminal Responsibility

As we review the evidence in this case in order to determine its sufficiency, we recognize the state may prove a defendant's guilt of an offense by the theory of criminal responsibility. One way to establish criminal responsibility is to prove the accused, while acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, solicited, directed, aided, or attempted to aid another person in committing the offense. Tenn. Code Ann. § 39-11-402(2). Criminal responsibility is not a separate or distinct crime. State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). A defendant convicted by the theory of criminal responsibility is guilty in the same degree as the principal who committed the crime and is considered to be a principal offender. *Id.* at 171.

## B. Aggravated Robbery of Ricky Ramsey

Aggravated robbery is the intentional or knowing theft of property from the person of another by violence or putting the victim in fear accomplished through the use or display of a deadly

weapon, or by any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. Tenn. Code Ann. §§ 39-13-401(a), -402(a)(1).

In the case *sub judice*, the state's proof established money and other items of value were taken from victim Ricky Ramsey while the defendant and Antonio Cartwright were assaulting Ramsey. Though the defendant denies personally taking the victim's property, the jury could have found, beyond a reasonable doubt, the defendant attacked and assaulted Ramsey with a pistol and beer bottle in order to aid or assist his companions in their efforts to locate and steal property, and was, therefore, criminally responsible for the thefts which were accomplished via the violence which, by his own admission, he personally committed upon Ramsey. Witnesses testified the defendant entered the apartment and almost immediately launched an unprovoked attack on Ramsey. While the defendant claims he was unaware of theft of Ramsey's property because he was involved in a fight with Ramsey, the jury could reasonably have found otherwise. The state's proof established the defendant's companions ransacked the small apartment, all of which could be viewed from the living room. Ramsey and Katrina Bracey testified Ramsey was no longer struggling with the defendant after he was struck in the head with the beer bottle. Also, the proof showed the defendant ordered Ramsey and the other victims to the ground, indicating the episode was actually a robbery in progress rather than a mere scuffle with Ramsey. Further, even the proof submitted by the defendant indicated the defendant's cohort, Brandon Moore, removed $500 in marijuana from Ricky Ramsey's closet and later shared the marijuana with the defendant. The jury could have reasonably found, based on the proof, the defendant assaulted Ramsey to assist the theft in order to benefit in the proceeds and was, therefore, criminally responsible for the actions of the others in stealing Ramsey's property. For all of these reasons, we conclude the evidence was sufficient to convict the defendant of the aggravated robbery of Ramsey.

### C. Aggravated Assault of Robert Bracey

Although indicted for aggravated robbery of Robert Bracey, the defendant was convicted of the lesser-included offense of aggravated assault. Assault is committed when the defendant, while acting intentionally, knowingly or recklessly, causes bodily injury to the victim, or intentionally or knowingly causes the victim to reasonably fear imminent bodily injury. Tenn. Code Ann. § 39-13-101(a)(1), (2). If a perpetrator intentionally or knowingly commits the assault while using or displaying a deadly weapon, he is guilty of aggravated assault. Tenn. Code Ann. § 39-13-102(a)(1)(B). A deadly weapon under the aggravated assault statute is a firearm or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Tenn. Code Ann. § 39-11-106(5). As previously discussed, the state may also prove an offense by the theory of criminal responsibility. Tenn. Code Ann. § 39-11-402.

The proof established the men accompanying the defendant grabbed Robert Bracey and dragged him into another room where they struck him, kicked him, and stood on his back. Clearly, these actions constituted assault. The proof also showed the defendant, displaying a pistol, told the victims to get down on the floor and not move. Even if the jury believed the pistol was a b.b. pistol, which it was not required to do, it could still find the b.b. pistol was a deadly weapon capable of causing serious bodily injury based upon the manner of its use by defendant. *See* State v. Malcomb

-6-

Wampler, C.C.A. No. 03C01-9608-CR-00325, 1997 WL 559433, at *3 (Tenn. Crim. App. Sept. 9, 1997, at Knoxville). Given the facts submitted to the jury, it could have reasonably found the defendant, acting with the intent to promote or assist the assault of Bracey, aided in the commission of the assault and was, therefore, criminally responsible for the assault. Further, the jury could have reasonably found the assault constituted an aggravated assault due to the defendant's display of the deadly weapon.

### D. Aggravated Assault of Katrina Bracey

Katrina Bracey testified the defendant pointed the gun at her when he ordered her into a bedroom. Based on this testimony, the jury could have reasonably found this action caused her to reasonably fear imminent bodily injury and thereby constituted an assault. Further, since this assault was accomplished through the display of the gun, the jury could have reasonably found it to be an aggravated assault with a deadly weapon for the same reasons stated above.

For all of these reasons, the defendant's argument that there was insufficient evidence to support his convictions is without merit.

### SENTENCING

The defendant argues the trial court erred in setting the length of each sentence. He further argues the trial court erred in ordering the concurrent five-year sentences for the two aggravated assaults to run consecutively to the ten-year sentence for aggravated robbery.

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence for these offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett,, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471,

479 (Tenn. Crim. App. 2000); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

## A. Aggravated Robbery

The range of punishment for a Range I offender for aggravated robbery, a Class B felony, is eight to twelve years. *See* Tenn. Code Ann. § 40-35-112(a)(2). In setting this aggravated robbery sentence at ten years, the trial court applied enhancement factors (2) (the defendant was a leader in the commission of the offense) and (3) (the offense involved more than one victim). Tenn. Code Ann. § 40-35-114 (2), (3). It also applied mitigating factor (8) (the defendant was suffering from a mental or physical condition that significantly reduced his culpability). Tenn. Code Ann. § 40-35-113(8). The trial court enhanced the defendant's Range I sentence for the Class B felony to eleven years, and then reduced the sentence to ten years due to the mitigating factor.

The defendant argues the trial court misapplied the two enhancement factors. First, he submits the proof was insufficient to establish the defendant was the leader in the offense. However, it is not necessary for the trial court to find the defendant to be **the** leader of the offense; instead, the statute only requires the defendant to be **a** leader in the offense. Tenn. Code Ann. § 40-35-114(2); State v. Robinson, 971 S.W.2d 30, 47 (Tenn. Crim. App. 1997). The proof at trial established the defendant initiated the crime when he attacked Ricky Ramsey; thus, the proof was sufficient to support the trial court's finding that the defendant was a leader in the commission of the offense of aggravated robbery.

However, the trial court misapplied enhancement factor (3)(the offense involved more than one victim). This factor may not be applied where the defendant is separately convicted of offenses committed against each victim. State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995). Here, the defendant was convicted of separate offenses for his actions against the other victims; thus, the factor cannot be applied. However, after our review of the record, we conclude the application of the other enhancement factor justifies the ten-year sentence, which is two years above the minimum.

The defendant, who was eighteen at the time of the offense, further argues the trial court should have applied Tenn. Code Ann. § 40-35-113(6) as a mitigating factor because he lacked substantial judgment in committing the offense because of his youth. Our state supreme court has stated "courts should consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstances tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993). The application of factor (6) is not determined solely by chronological age. State v. Elder, 982 S.W.2d 871, 879 (Tenn. Crim. App. 1998). The defendant submits evidence presented regarding his age, education, experience and social history warrants the application of this mitigator. The defendant testified he reads at a second grade level. His grandmother testified the defendant's mother abused him and gave him Valium as a small child. She also said the defendant has a learning disability. It appears to this court that the trial court considered

this evidence in applying mitigating factor (8) (the defendant was suffering from a mental or physical condition that significantly reduced his culpability). Since the trial court considered these matters under mitigating factor (8), the defendant is entitled to no further reduction under mitigating factor (6).

The defendant further urges this court to consider the defendant's expressions of remorse as a mitigating factor. At sentencing, the defendant submitted original letters to the victims in which he asked them for forgiveness. However, the defendant told the probation officer preparing the presentence report the offenses were "all a misunderstanding and if I wasn't hanging with the wrong people, I wouldn't be in this predicament." Further, at sentencing, the defendant told the assistant district attorney, "You treat me worse than anybody else. Like saying I'm the guilty one." We are unable to conclude the defendant is entitled to a further reduction based upon his alleged remorse.

For the reasons set forth, we affirm the defendant's sentence of ten years for aggravated robbery.

### B. Aggravated Assaults

The range of punishment for a Range I offender for aggravated assault, a Class C felony, is three to six years. *See* Tenn. Code Ann. § 40-35-112(a)(3). In setting each aggravated assault sentence at five years, the trial court applied enhancement factors (10) (the defendant had no hesitation about committing a crime when the risk to human life was high) and (16) (the crime was committed under circumstances under which the potential for bodily injury to a victim was great). Tenn. Code Ann. § 40-35-114(10), (16). As previously stated, the defendant's convictions for aggravated assault rather than simple assault were based on his displaying a deadly weapon. There is necessarily a risk to human life and a great potential for bodily injury whenever a deadly weapon is used. State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995); State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994). Therefore, these enhancement factors were inherent in the defendant's aggravated assault convictions, and the trial court should not have used them to enhance the defendant's sentences. Therefore, we reduce each sentence for aggravated assault to the minimum sentence of three years.

### C. Consecutive Sentencing

The defendant further argues the trial court erred by ordering his sentences for aggravated assault to be served consecutively to his aggravated robbery sentence. The trial court imposed consecutive sentencing after finding defendant was a "dangerous offender," and he committed the instant offenses while on probation for misdemeanor assault. A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> . . . .

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; [or]

(6) [t]he defendant is sentenced for an offense committed while on probation.

. . . .

Tenn. Code Ann. § 40-35-115(b)(4), (6); *see also* State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995).

Specific findings that an extended sentence is necessary to protect society and is reasonably related to the severity of the offenses are prerequisites to consecutive sentencing under the "dangerous offender" category in Tenn. Code Ann. § 40-35-115(b)(4). State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are not required for the other categories of Tenn. Code Ann. § 40-35-115(b). State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). Nevertheless, the general principles of sentencing require that the length of sentence be "justly deserved in relation to the seriousness of the offense" and "be no greater than that deserved for the offense committed." *Id.* at 460 (citing Tenn. Code Ann. §§ 40-35-102(1) and 103(2)).

The trial court failed to make the required Wilkerson findings regarding the "dangerous offender" category. However, the trial court properly found that the instant offenses were committed while the defendant was on supervised probation for misdemeanor assault. This alone is sufficient to justify consecutive sentencing. *See* State v. Ensley, 956 S.W.2d 502, 514 (Tenn. Crim. App. 1996) (holding only one statutory factor is needed to justify consecutive sentences). An aggregate sentence of thirteen years is justly deserved, and no greater than that deserved, for these offenses.

## CONCLUSION

In summary, we affirm all convictions. We affirm the sentence of ten years for aggravated robbery, reduce the sentences for each of the two aggravated assaults to three years, and require the two three-year sentences to run concurrently with each other but consecutively to the ten-year sentence, for a total effective sentence of thirteen years.

AFFIRMED AS MODIFIED.

_____

-10-

JOE G. RILEY, JUDGE